UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DYNACRAFT BSC, INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>PACIFIC CYCLE, INC.,<br><br>    Defendant. | Case No. 16-cv-04334-BLF<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Re: ECF 20] |

This case arises from a dispute between Plaintiff Dynacraft BSC, Inc. and Defendant Pacific Cycle, Inc., both distributers of bicycles, regarding Pacific's use of the model name "Decoy" on a line of children's bicycles. Dynacraft claims that Pacific's use of the Decoy name infringes Dynacraft's registered "DECOY" trademark in violation of federal and state laws, and also breaches a contract between the parties under which Pacific agreed to stop using the Decoy name after exhausting its then-current inventory of Decoy bicycles.

Pacific moves to dismiss Dynacraft's contract claim under Federal Rule of Civil Procedure 12(b)(6). The motion is DENIED for the reasons discussed below.

I.   **BACKGROUND**[1]

Dynacraft distributes and sells bicycles directly to consumers and through retailers such as Kmart, Target, and Walmart. Compl. ¶ 4, ECF 1. Dynacraft has used the trademark DECOY on its bicycles since at least 2001, and it obtained a U.S. Trademark registration of the mark in 2002. *Id.* ¶ 9. Dynacraft has obtained valuable goodwill in the DECOY trademark, which indicates that Dynacraft is the source of bicycles. *Id.* ¶ 12.

Dynacraft learned that Pacific, a competitor, was selling Mongoose brand bicycles using the model name Decoy in the United States through Kmart stores. Compl. ¶ 13 and Exh. B. On

---

[1] Plaintiff's factual allegations are accepted as true for purposes of the motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

December 23, 2009, Dynacraft's counsel wrote to Pacific, provided a copy of Dynacraft's DECOY trademark registration certificate, and demanded that Pacific cease using the DECOY mark on bicycles. *Id.* Pacific's counsel responded by letter, and the parties' attorneys thereafter engaged in correspondence by letter and email through late January 2010. Compl. ¶¶ 14-16 and Exhs. B-E. Dynacraft claims that this correspondence resulted in a binding contract under which Pacific agreed to stop using the DECOY trademark after exhausting its small remaining inventory of Mongoose Decoy bicycles in exchange for Dynacraft's forbearance in bringing suit. *Id.* ¶ 38.

In March 2016, Dynacraft discovered that Pacific was still selling bicycles bearing the DECOY trademark. Compl. ¶ 18 and Exh. F. Dynacraft's counsel wrote to Pacific on March 24, 2016, complaining of Pacific's continued infringement of Dynacraft's DECOY trademark. *Id.* ¶ 19 and Exh. G. Pacific's counsel responded by letter dated April 18, 2016, acknowledging the prior dispute and that "to resolve the matter Pacific Cycle agreed to cease using the model name upon exhaustion of the then-remaining inventory." *Id.* ¶ 20 and Exh. H. Pacific's counsel explained that "due to a failure in internal communications, in addition to the then-remaining inventory which was sold, new Mongoose Decoy products were manufactured and then sold." Compl. Exh. H. Pacific's counsel offered his personal assurance that "the ongoing use of the Mongoose Decoy model name was not an intentional disregard of the January 2010 commitment made to cease use" but rather "was simply a failure in internal company communications." *Id.* Counsel proposed several measures that Pacific would be willing to undertake to resolve the situation, including ceasing production of Mongoose Decoy bicycles and selling all remaining inventory outside of North America. *Id.* The parties' attorneys engaged in further correspondence but were unable to reach agreement because Pacific refused to provide an accounting of its sales made using the DECOY trademark. *Id.* ¶ 21.

Dynacraft filed this lawsuit on August 1, 2016, asserting claims for: (1) federal trademark infringement, (2) federal trademark infringement, false designation, and unfair competition, (3) common law trademark infringement, (4) breach of contract, and (5) unfair competition under California law. Pacific moves to dismiss the claim for breach of contract, arguing that as a matter of law the correspondence between the parties did not result in a binding contract. Dynacraft

opposes the motion, arguing that the parties' correspondence did result in a binding contract which Pacific breached by continuing to sell bicycles under the Decoy name.

## II. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III. DISCUSSION

Pacific argues that Dynacraft has failed to allege facts showing that the parties entered into a binding contract. It is unclear from this record whether Dynacraft's contract claim is governed by California law or Wisconsin law. However, the parties agree that the Court need not resolve that issue at this stage because under both states' laws the elements of contract formation are the same: offer, acceptance, and consideration. *See Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 475 (2012) (evidence of contract formation requires evidence of offer, acceptance, and consideration); *Runzheimer Int'l, Ltd. v. Friedlen*, 362 Wis. 2d 100, 112 (2015) ("The elements of an enforceable contract are offer, acceptance, and consideration.").

Pacific argues that Dynacraft has not pled facts showing any of these elements. According to Pacific, the correspondence attached to the complaint establishes as a matter of law that no offer

3

was made, no acceptance was manifested, and no consideration was given. The Court disagrees, and concludes that the facts set forth in the complaint, including the attached correspondence, plausibly allege contract formation. Under both California law and Wisconsin law, whether a contract was formed generally is a question for the trier of fact. *See Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.*, 240 Cal. App. 4th 763, 771 (2015), *review denied* (Jan. 13, 2016) ("[W]here the existence . . . of a contract or the terms thereof is the point in issue, and the evidence is conflicting or admits of more than one inference, it is for the . . . trier of the facts to determine whether the contract did in fact exist.") (internal quotation marks and citations omitted); *Fontana Builders, Inc. v. Assurance Co. of Am.*, 369 Wis. 2d 495, 519 (2016) ("Allowing the jury to resolve factual disputes about contract formation is consistent with the contract principle that whether both parties agreed to be bound by a contract is a question of fact.") (internal quotation marks and citation omitted).

Here, as Dynacraft alleges and the correspondence reflects, Dynacraft's initial letter to Pacific demanded that Pacific stop using the DECOY trademark, asserted that Pacific's use of the DECOY mark constituted trademark infringement and unfair competition, and noted that available remedies for Pacific's conduct "include an injunction preventing further use of the mark, defendant's profits, damages sustained by plaintiff, the costs of the action, and in certain cases treble damages and reasonable attorney fees." Compl. ¶ 13 and Exh. B. Pacific's response letter offered to "resolve this matter" by "agree[ing] to cease use of the 'decoy' model name upon exhaustion of current product inventory." *Id.* ¶ 14 and Exh. C. Dynacraft's answering letter arguably manifested assent to Pacific's offer, indicating that "Dynacraft appreciates Pacific's cooperation," and that "[a]s Pacific Cycle has agreed to cease use of the DECOY trademark" there was no need to discuss further whether Pacific's conduct was infringing. *Id.* ¶ 15 and Exh. D.

Dynacraft did request further information regarding the number of DECOY bicycles remaining in Pacific's inventory and the date when such inventory was expected to be exhausted. *Id.* Pacific provided the information regarding the amount of remaining inventory ("just over 400 Mongoose Decoy bicycles") but did not address the date that the inventory was expected to be exhausted. *Id.* ¶ 16 and Exh. E. When Dynacraft's counsel followed up with an email inquiry,

4

Pacific's counsel stated that Pacific had no open orders for the Decoy products and therefore could not "estimate when the small inventory of products may be sold, if at all." *Id.* Exh. E. However, counsel stated that "[g]iven Pacific Cycle's commitment not to manufacture or import any additional products under the Mongoose Decoy name, we would think that these few residual products should not be of concern." *Id.* Dynacraft's counsel responded, "Dynacraft appreciates your cooperation." *Id.* Dynacraft considered the matter closed and therefore "did not pursue an infringement action seeking an injunction, damages, or an accounting of Pacific's sales." Compl. ¶ 17.

A jury reasonably could view the parties' correspondence to contain an offer from Pacific to stop using the DECOY mark in exchange for Dynacraft's forbearance from suit and Dynacraft's acceptance of that offer. Pacific asserts that such an interpretation would be unreasonable as a matter of law because no offer or acceptance was spelled out expressly. However, while "the early common law required particular incantations to make an offer and formulaic expressions to accept . . . the modern rule is otherwise." *Roth v. Malson*, 67 Cal. App. 4th 552, 562 (1998). "Contract formation is not a matter of form but substance; there are no magic words and no magic forms essential to the creation of binding agreement." *Id.*

The cases relied upon by Pacific are factually distinguishable. For example, Pacific relies on *Mondo, Inc. v. Sirco Int'l Corp.*, No. 97 CIV. 3121 MBM, 1998 WL 849401 (S.D.N.Y. Dec. 7, 1998), in which the district court ruled on summary judgment that cease and desist correspondence was insufficient to establish contract formation. In *Mondo*, a trademark dispute arose over the use of the word "Mondo," the Italian term for "world." *Id.* at *1. The defendant, the owner of a registered trademark for the word MONDO, objected to the plaintiff's use of the word MONDO in connection with the plaintiff's clothing line. The parties tried to resolve their dispute over the course of approximately fifteen months of periodic meetings and correspondence. *Id.* Toward the end of that period, representatives of the plaintiff wrote two separate letters to the defendant's counsel stating that the plaintiff would change its brand to one not in conflict with "Mondo." *Id.* at *1-2. The defendant later claimed that the plaintiff breached those "contracts" by failing to change its brand name so as not to infringe the defendant's MONDO trademark. *Id.* at *12. The

district court held at the summary judgment stage that the plaintiff's letters were merely unilateral statements of intention, and that the record before it did not contain any objective signs of offer, acceptance, or consideration.  *Id.*  In the present case, however, Dynacraft's claim of contract formation is based not on unilateral statements of intent after more than a year of unfruitful negotiations, but on the parties' back-and-forth correspondence over a short period of time.  As apparently was not the case in *Mondo*, that back-and-forth correspondence reasonably could be interpreted as demonstrating offer, acceptance, and consideration.  The present case also is distinguishable from *Mondo* in that here, the parties' later correspondence reasonably could be viewed to suggest that Pacific itself believed that it had entered into a binding contract, as Pacific referred to the fact that it previously had "agreed" and made a "commitment" to stop selling Decoy products in order to "resolve" the trademark dispute.  Compl. Exh. H.

The other cases cited by Pacific likewise are factually distinguishable.  Based on the allegations made in this case, including the parties' correspondence attached to the complaint, the Court concludes that Dynacraft plausibly has alleged formation of a contract and breach by Pacific.

## IV. ORDER

For the foregoing reasons, Pacific's motion to dismiss Dynacraft's claim for breach of contract is DENIED.

Dated:  January 5, 2017

_____
BETH LABSON FREEMAN
United States District Judge